UNITED STATES COURT FOR THE
DISTRICT OF KANSAS

UNITED STATES OF AMERICA

and

THE STATE OF KANSAS, ex rel.
KANSAS DEPARTMENT OF
HEALTH AND ENVIRONMENT,

*Plaintiffs*,

v.

SOUTH BOW (USA) LP f/k/a
TRANSCANADA KEYSTONE PIPELINE,
LP and SOUTH BOW INFRASTRUCTURE
OPERATIONS INC. f/k/a TC OIL
PIPELINE OPERATIONS INC.,

*Defendants*

Civ. No.    2:26-cv-2401

TABLE OF CONTENTS

I.      JURISDICTION AND VENUE ...........................................................................................4
II.     APPLICABILITY ...............................................................................................................5
III.    DEFINITIONS.....................................................................................................................5
IV.     CIVIL PENALTY...............................................................................................................9
V.      INJUNCTIVE RELIEF .....................................................................................................10
VI.     STATE SUPPLEMENTAL ENVIRONMENTAL PROJECT ........................................13
VII.    REPORTING REQUIREMENTS .....................................................................................15
VIII.   STIPULATED PENALTIES TO STATE .........................................................................18
IX.     STIPULATED PENALTIES TO UNITED STATES ........................................................19
X.      FORCE MAJEURE ...........................................................................................................23
XI.     DISPUTE RESOLUTION .................................................................................................25
XII.    INFORMATION COLLECTION AND RETENTION ....................................................27
XIII.   EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS..........................................29
XIV.    COSTS ...............................................................................................................................31
XV.     NOTICES...........................................................................................................................31
XVI.    EFFECTIVE DATE ..........................................................................................................33
XVII.   RETENTION OF JURISDICTION ..................................................................................33
XVIII.  MODIFICATION ..............................................................................................................34
XIX.    TERMINATION.................................................................................................................34
XX.     PUBLIC PARTICIPATION ..............................................................................................35
XXI.    SIGNATORIES/SERVICE................................................................................................36
XXII.   INTEGRATION ................................................................................................................36
XXIII.  26 U.S.C. SECTION 162(F)(2)(A)(II) IDENTIFICATION .............................................36
XXIV.   HEADINGS .......................................................................................................................37
XXV.    FINAL JUDGMENT .........................................................................................................37

Plaintiff United States of America, on behalf of the United States Environmental Protection Agency ("EPA"), and the State of Kansas, by and through the Kansas Department of Health and Environment ("KDHE"), have filed a complaint in this action concurrently with this Consent Decree, alleging that South Bow (USA) LP f/k/a TransCanada Keystone Pipeline, LP, and South Bow Infrastructure Operations Inc. f/k/a TC Oil Pipeline Operations Inc. (collectively, "South Bow" or "Defendants") violated Sections 301(a) and 311(b)(3) of the Clean Water Act ("Act"), 33 U.S.C. § 1311(a) & 1321(b)(3), Section 65-164 of the Kansas Water Supply and Sewage Act, K.S.A. 65-164, and Section 28-16-28e of the Kansas Surface Water Quality Standards, K.A.R. 28-16-28e.

The Complaint against South Bow alleges that on December 7, 2022, South Bow unlawfully discharged approximately 12,937 barrels (543,354 gallons) of heavy crude oil (diluted bitumen) from the Cushing Extension of the Keystone Pipeline ("Pipeline"), at a location in Washington County, Kansas, which flowed into Mill Creek, a perennial stream and a tributary of the Kansas River, and the adjoining shorelines ("Mill Creek Oil Spill").

Following the Mill Creek Oil Spill, EPA and KDHE issued cleanup orders to South Bow, and the U.S. Pipeline and Hazardous Materials Safety Administration ("PHMSA") issued a corrective action order to South Bow. South Bow voluntarily implemented corrective actions before entering those orders. South Bow worked cooperatively with those regulators following the Mill Creek Oil Spill incident and has implemented the required cleanup and corrective actions. Cleanup of the spill and remediation of the Mill Creek Oil Spill was completed in February 2024.

In approximately October 2024, South Bow's parent corporation was spun off from TC Energy Corp. as an independent company.

Defendants deny the allegations in the Complaint and do not admit any liability to the United States or the State arising out of or in connection with the allegations in the Complaint.

The Parties recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith and will avoid litigation among the Parties and that this Consent Decree is fair, reasonable, and in the public interest.

NOW, THEREFORE, before the taking of any testimony, without the adjudication or admission of any issue of fact or law except as provided in Section I, and with the consent of the Parties, IT IS HEREBY ADJUDGED, ORDERED, AND DECREED as follows:

## I.    JURISDICTION AND VENUE

1.    This Court has jurisdiction over the subject matter of this action, pursuant to 28 U.S.C. §§ 1331, 1345, and 1355, and Sections 309(b) and 311(b)(7)(E) and (n) of the Act, 33 U.S.C. §§ 1319(b), 1321(b)(7)(E) and (n), and over the Parties. This Court has supplemental jurisdiction over the State law claims asserted by the State pursuant to 28 U.S.C. § 1367. Venue lies in this District pursuant to 33 U.S.C. §§ 1319(b) and 1321(b)(7)(E), and 28 U.S.C. §§ 1391(b) and 1395(a), because the violations alleged in the Complaint are alleged to have occurred in, and South Bow conducts business in, this judicial district. For purposes of this Decree, or any action to enforce this Decree, Defendants consent to the Court's jurisdiction over this Decree and any such action and over Defendants and consents to venue in this judicial district.

2.    For purposes of this Consent Decree, Defendants agree that the Complaint states claims upon which relief may be granted pursuant to Sections 301(a) and 311(b)(3) of the Clean Water Act ("Act"), 33 U.S.C. § 1311(a) & 1321(b)(3), and Sections 65-167 and 65-170d of the Kansas Water Supply and Sewage Act, K.S.A. 65-167 and 65-170d.

4

## II.    APPLICABILITY

3.    The obligations of this Consent Decree apply to and are binding upon the United States and the State, and upon Defendants and any successors, assigns, or other entities or persons otherwise bound by law.

4.    No transfer of ownership or operation of the Pipeline, whether in compliance with the procedures of this Paragraph or otherwise, shall relieve South Bow of their obligation to ensure that the terms of the Decree are implemented. At least 30 Days prior to such transfer, South Bow shall provide a copy of this Consent Decree to the proposed transferee and shall simultaneously provide written notice of the prospective transfer, together with a copy of the proposed written agreement, to EPA and DOJ, in accordance with Section XV (Notices). Any attempt to transfer ownership or operation of the Pipeline without complying with this Paragraph constitutes a violation of this Decree.

5.    South Bow shall provide a copy of this Consent Decree to all officers, employees and agents whose duties might reasonably include compliance with any provision of this Decree, as well as to any contractor retained to perform work required under this Consent Decree. South Bow shall condition any such contract upon performance of the work in conformity with the terms of this Consent Decree.

6.    In any action to enforce this Consent Decree, South Bow shall not raise as a defense the failure by any of their officers, directors, employees, agents, or contractors to take any actions necessary to comply with the provisions of this Consent Decree.

## III.    DEFINITIONS

7.    Terms used in this Consent Decree that are defined in the Act or in the Hazardous Liquid Pipeline Safety Act of 1979 ("PSA"), 49 U.S.C. § 60101 et seq., as applicable, or in regulations promulgated pursuant to either statute, have the meanings assigned to them in the

relevant statute or regulations, unless otherwise provided in this Decree. In the event of a conflict between the Act and the PSA, the definition in the Act and its regulations shall control. Whenever the terms set forth below are used in this Consent Decree, the following definitions apply:

a.      "ACAO" means the Amended Corrective Action Order issued by PHMSA to TC Oil Pipeline Operations, Inc. (n/k/a South Bow Infrastructure Operations Inc.) on March 7, 2023, in connection with the Mill Creek Oil Spill.

b.      "Baseline Assessment and Reassessment Plan" means a written strategy that outlines how South Bow evaluates the integrity of its pipeline segments using approved assessment methods as per the U.S. Code of Federal Regulations that governs the transportation of hazardous liquids and carbon dioxide by pipeline (49 C.F.R. Part 195) under the administration and oversight of PHMSA. It includes the integrity assessment history, selected inspection techniques, a schedule for completing assessments, and a justification based on risk factors.

c.      "Complaint" means the complaint filed by the United States and the State in this action.

d.      "Consent Decree" or "Decree" means this Decree.

e.      "Day" means a calendar day unless expressly stated to be a business day. In computing any period of time for a deadline under this Consent Decree, where the last day would fall on a Saturday, Sunday, or federal holiday, the period runs until the close of business of the next business day.

f.      "Defendants" means South Bow (USA) LP (formerly known as TransCanada Keystone Pipeline, LP) and South Bow Infrastructure Operations Inc.

(formerly known as TC Oil Pipeline Operations Inc.) (collectively, "South Bow").

g.    "DOJ" means the United States Department of Justice and any of its successor departments or agencies.

h.    "Engineering Assessment" means a documented assessment conducted using engineering principles, by or under the direct supervision of a licensed professional, to evaluate the fitness-for-service or integrity of pipeline systems. The assessments vary in structure and format dependent on the scope of the assessment and are triggered by many events including operational changes (e.g., temperature, pressure, flow rate), detection of anomalies through ILI, or regulatory requirements.

i.    "EPA" means the United States Environmental Protection Agency and any of its successor departments or agencies.

j.    "Effective Date" means the definition provided in Section XVI.

k.    "Integrity Threat Assessment" means a documented, detailed evaluation of pipeline segments to identify and prioritize all known or suspected threats and their potential consequences, ensuring safe and reliable long-term operation of the system. It integrates failure analysis, historical data, and inspection results to assess each section's condition and predict remaining life at specified stress levels.

l.    "KDHE" means the Kansas Department of Health and Environment.

m.    "Operational Reliability Assessment" means a focused analysis of girth weld integrity and failure consequences across the pipeline segments. It will identify risk factors—such as weld type, repair history, geohazards, and operating conditions—and evaluate potential impacts like spill volume and proximity to sensitive areas. The Operational Reliability Assessment will also outline preventive measures, testing, and

7

long-term remediation strategies to ensure safe pipeline operation.

n.    "Paragraph" means a portion of this Decree identified by an Arabic numeral.

o.    "Parties" means the United States, the State, and Defendants.

p.    "Phase 1" means the segment of the Pipeline running from the U.S.-Canada border to Steele City, Nebraska and from Steele City, Nebraska to Patoka, Illinois.

q.    "Phase 2" means the segment of the Pipeline running from Steele City, Nebraska to Cushing, Oklahoma.

r.    "Phase 3" means the segment of the Pipeline running from Cushing, Oklahoma to Houston and Port Arthur, Texas.

s.    "PHMSA" means the United States Pipeline and Hazardous Materials Safety Administration.

t.    "Pipeline" means any and all segments of South Bow's Keystone Pipeline, which runs from Hardisty, Alberta, Canada to Patoka, Illinois and Port Arthur, Texas, that are located in the United States.

u.    "Pipeline Safety Management System" means a structured management system framework in accordance with American Petroleum Institute Recommended Practice 1173 that consists of underlying programs, processes and procedures designed to ensure the safe, reliable, compliant and environmentally responsible operation of pipeline systems throughout their lifecycle.

v.    "Section" means a portion of this Decree identified by a Roman numeral.

w.    "State" means the State of Kansas, acting by and through KDHE.

8

x.      "United States" means the United States of America, acting on behalf of

EPA.

## IV.    CIVIL PENALTY

8.      Within 30 Days after the Effective Date, South Bow shall pay the sum of

$26,867,789.00 to the United States as a civil penalty, together with interest accruing from the

date on which the Consent Decree is lodged with the Court, at the rate specified in 28 U.S.C.

§ 1961 as of the date of lodging.

9.      South Bow shall pay the civil penalty together with interest, to the United States

by FedWire Electronic Funds Transfer ("EFT") to the U.S. Department of Justice in accordance

with written instructions to be provided to:

> Tracy Penn
> Senior Legal Counsel, Liquids Pipelines
> 920 Memorial City Way
> Suite 800
> Houston, TX 77024
> tracy.penn@southbow.com
> (281) 753-7584

by the Financial Litigation Unit ("FLU") of the United States Attorney's Office for the District

of Kansas after the Effective Date. South Bow may change the individual to receive payment

instructions on their behalf by providing written notice of such change to DOJ and EPA in

accordance with Section XV (Notices). Such monies are to be deposited in the Oil Spill Liability

Trust Fund. The payment shall reference the Civil Action Number assigned to this case and DOJ

Number 90-5-1-1-12906, and shall specify that the payment is made toward Clean Water Act

civil penalties to be deposited in the Oil Spill Liability Trust Fund pursuant to 33 U.S.C.

§ 1321(s) and 26 U.S.C. § 9509(b)(8).

10.      At the time of payment, South Bow shall send a copy of the EFT authorization

form and the EFT transaction record, together with a transmittal letter, which shall state that the

payment is for the civil penalty owed pursuant to the Consent Decree in this case and shall reference the Civil Action Number assigned to this case and DOJ Number 90-5-1-1-12906, to the United States in accordance with Section XV (Notices) and to EPA via email at cinwd_acctsreceivable@epa.gov or via regular mail at EPA Cincinnati Finance Office, 26 W. Martin Luther King Drive, Cincinnati, Ohio 45268.

11.     South Bow shall not deduct any penalties paid under this Decree pursuant to this Section or Sections VIII or IX (Stipulated Penalties) in calculating their federal income tax.

## V.     INJUNCTIVE RELIEF

12.     Until termination of this Decree pursuant to Section XIX, South Bow shall perform the injunctive relief set forth in this Section to prevent and mitigate any future oil discharges from the Pipeline. The requirements set forth in this Section do not relieve South Bow of any obligations under applicable federal pipeline safety laws or regulations.

13.     Applicable Procedures. South Bow shall continue to apply existing specifications and procedures, which were in place prior to the spin-off of South Bow as an independent company, until South Bow standards are adopted or developed and implemented that are consistent with, and at least as stringent as, the prior specifications and procedures.

14.     Construction Inspector Training. South Bow shall continue to:

a.     Require all construction inspectors to be certified to the most current version of American Petroleum Institute Recommended Practice 1169 Pipeline Construction Inspector, where applicable and feasible.

b.     Develop and implement processes and procedures that ensure all construction inspectors are trained on all current applicable company construction standards, procedures, specifications and practices, where applicable.

10

15.     <u>Digital Inspection Platform</u>. South Bow shall continue to require all construction inspectors and fabrication, construction inspection, and commissioning processes to use South Bow's digital inspection platforms. Within six months of the Effective Date of this Decree, South Bow will update its digital inspection platforms to incorporate automatic flagging of deficiencies, real-time exception reporting, and geotagged photographs, as applicable and feasible.

16.     <u>Pipeline Inspection Schedule</u>. South Bow shall continue to require inspections on all segments of the Pipeline on the following schedules:

     a.     Acoustic leak detection in-line inspections: at least annually;

     b.     Inertial measurement unit and bending strain assessment: at least every 2 years; and

     c.     Ultrasonic circumferential crack tool re-inspections: at least every 5 years.

17.     <u>Annual Integrity Threat Assessment Refresh</u>. South Bow shall continue to annually refresh, through the Baseline Assessment and Reassessment Plan, the Integrity Threat Assessment program by incorporating prior year learnings, including results from ultrasonic inspections, investigative digs, and operational cycling.

18.     <u>Operational Cycling Limits</u>. South Bow shall continue to maintain cycling below Aggressive range (<1675 Quarterly Year Cycles per year) on a rolling 12-month sum on all segments of the Pipeline (including both pressure and thermal cycling).

19.     <u>Thermal Stress Assessment</u>. South Bow shall conduct Engineering Assessments that incorporate thermal stresses for any significant change being contemplated on the Pipeline, including but not limited to operational changes, removal of pressure restrictions, or flow ramp-ups.

11

20.     Post-Incident Review Procedure. Within six months of the Effective Date of this Decree, South Bow shall develop and implement, within South Bow's Pipeline Safety Management System, a process that, following a failure incident, ensures the following are reviewed and revised as needed to prevent a similar future incident:

a.      All procedures, specifications, and work instructions related to the cause of or a factor contributing to the incident; and

b.      All procedures, practices, and response plans related to any factors that contributed to an escalation in the severity or consequences of the incident.

21.     Pipe Movement Detection. Within six months of the Effective Date of this Decree, South Bow shall develop and adopt procedures to evaluate (where appropriate) pipe movement when uncovering or excavating a section of pipe, including:

a.      A requirement that observed pipe movement be recorded – including the estimated amount and direction of movement – and reported in the digital inspection platform as part of the record of the excavation; and

b.      A process for incorporating pipe movement observations into engineering and risk assessments.

22.     Phase 3 Assessments. Within six months of the Effective Date of this Decree, South Bow shall complete both an Integrity Threat Assessment and an Operational Reliability Assessment for Phase 3 and submit a summary of the results of both assessments to EPA as part of the Semi-Annual Report.

23.     Permits.  Where any compliance obligation under this Section requires South Bow to obtain a federal, state, or local permit or approval, South Bow shall submit timely and complete applications and take all other actions necessary to obtain all such permits or approvals.

South Bow may seek relief under the provisions of Section X (Force Majeure) for any delay in the performance of any such obligation resulting from a failure to obtain, or a delay in obtaining, any permit or approval required to fulfill such obligation, if South Bow has submitted timely and complete applications and has taken all other actions necessary to obtain all such permits or approvals.

VI.    STATE SUPPLEMENTAL ENVIRONMENTAL PROJECT

24.    In satisfaction of liability for violations of Kansas state laws related to the Mill Creek Oil Spill, South Bow shall contribute $3,080,000.00 to subsidize development and implementation of one or more Supplemental Environmental Projects ("SEPs") approved by KDHE pursuant to this Section. Such amount contributed shall be designated as moneys to be used to pay the cost of natural resource restoration activities pursuant to K.S.A. 75-5672.

25.    No later than one hundred eighty (180) Days after the Effective Date, or as extended upon approval of KDHE, South Bow shall submit to KDHE one or more SEP proposals ("SEP Proposal(s)") for review that include the following information:

a.    A schedule for each SEP's intermediate progress and completion;

b.    A calculation of the total amount that South Bow shall spend on each SEP; and

c.    A schedule for progress reports and submission of final documentation verifying completion of each SEP.

26.    KDHE shall only approve proposed SEPs that satisfy the following criteria:

a.    SEPs must be environmentally beneficial to the State of Kansas and its residents, and must improve and protect the environment as well as reduce environmental risks to the public as determined by KDHE.

b.    SEPs may not be any project that South Bow has already completed, or

13

any project South Bow has planned, committed to be completed, or budgeted prior to the Effective Date of this Decree.

c.      SEPs must go beyond the minimum compliance with the law, whether water quality, other environmental, or any other state or federal law.

d.      SEPs must not adversely affect another environmental concern in the process of implementation.

27.      South Bow shall not make expenditures on any SEP until KDHE approves the SEP.

28.      KDHE shall not withhold or unreasonably delay approval of any proposed SEP that meets the criteria of Paragraphs 26.a. through 26.d. If KDHE does not approve a proposed SEP, it shall detail the basis for its non-approval in writing.

29.      If KDHE does not approve the proposed SEP, South Bow shall adjust the SEP Proposal(s), as appropriate, based on KDHE's basis for non-approval and resubmit the updated SEP Proposal(s) to KDHE within 45 Days of receipt of KDHE's comments, or such other timeframe as agreed to by South Bow and KDHE. Any disputes regarding approval of the SEP Proposal(s) will be subject to the Dispute Resolution provisions of Section XI of this Consent Decree.

30.      Upon receipt of written notice by KDHE approving a proposed SEP, South Bow shall initiate design and implementation, as appropriate, in accordance with the terms of the approved proposal.

31.      South Bow shall complete any SEP approved by KDHE within three years of the Effective Date unless KDHE approves of an alternative date in writing.

14

32.     South Bow's performance under this Section is subject to the provisions of Section X (Force Majeure) and Section XI (Dispute Resolution) of this Decree, except that in such cases the relevant Plaintiff will be the State, and neither EPA nor the United States will participate in resolution of the issue or receive any notifications, statements of position or other deliverables specified in Sections X or XI.

33.     Failure by South Bow to substantially comply with any term or deadline of an approved SEP shall be subject to stipulated penalties to the State of Kansas in accordance with Section VIII (Stipulated Penalties to State).

## VII.    REPORTING REQUIREMENTS

34.     Twice annually after the lodging of this Consent Decree, until termination of this Decree pursuant to Section XIX, South Bow shall submit electronically to EPA, DOJ, and the State at the addresses set forth in Section XV (Notices) a report on the topics identified in Paragraphs 35 and 36 of this Decree during the preceding six months (Semi-Annual Report). The first Semi-Annual Report of each year shall cover the period from January 1 - June 30 and shall be due on July 31 of that year. The second Semi-Annual Report of each year shall cover the period of July 1 - December 31 of the year and shall be due on January 31 of the following year.

35.     Each Semi-Annual Report shall include:

a.     A summary of South Bow's implementation of and compliance with the requirements of this Decree, including the requirements of Section V, during the reporting period. For each requirement in Section V, the summary shall explain the actions taken by South Bow in sufficient detail to demonstrate compliance with the requirement. For requirements in Paragraphs 13-19, the summary shall identify and explain any deviation from the continued requirement during the reporting period. For requirements in Paragraphs 15 and 20-22 with compliance deadlines, the summary shall

15

state whether the requirement is complete and/or identify any further actions planned to complete the requirement. Upon request by EPA, South Bow shall provide additional information or evidence necessary for EPA to assess compliance with the requirements of Section V.

b.    A summary of the activities undertaken by South Bow under the ACAO per PHMSA's authority during the reporting period. Upon request by EPA, South Bow shall provide copies of any South Bow specifications that have completed PHMSA review during the reporting period.

c.    Documentation of any releases or spills that are reportable under applicable state or federal law that occurred on the Pipeline during the reporting period, regardless of whether they meet PHMSA prescribed reporting standards, including:

(1)    The specific GPS location of the release;

(2)    The size of the release;

(3)    Any identified cause(s) of the release;

(4)    Whether the release impacted a water of the United States; and

(5)    Documentation of the Post-Incident Review Procedures conducted following the release, as required by Paragraph 20.

d.    A summary of any activities of the types described in Paragraphs 35.a and 35.b that South Bow anticipates will be undertaken or completed in the upcoming reporting period.

36.    The Semi-Annual Report shall also include a description of any incidents of non-

compliance with the requirements of this Consent Decree during the reporting period; the likely cause of non-compliance; an explanation of how the incidents of non-compliance were, or will be, addressed; and an explanation of how South Bow will ensure such incidents do not recur. If the likely cause of a violation cannot be explained at the time the report is due, South Bow shall so state in the report. South Bow shall investigate the likely cause of the violation and shall then submit an amendment to the report, including an explanation of the likely cause of the violation, within 30 Days of the Day South Bow becomes aware of the cause of the violation. Nothing in this Paragraph or the following Paragraph relieves South Bow of their obligation to provide the notice required by Section X (Force Majeure).

37.     Whenever any violation of this Consent Decree or any other event affecting South Bow's performance under this Decree may pose an immediate threat to the public health or welfare or the environment, South Bow shall notify EPA's Regional Duty Officer at (913) 281-0991 and the State of Kansas Spill and Hazard Reporting Hotline at (785) 291-3333 as soon as possible, but no later than 24 hours after South Bow first knew of the violation or event. This procedure is in addition to the requirements set forth in the preceding Paragraph and any requirements South Bow is otherwise subject to under State or federal law or permits.

38.     Each report submitted by South Bow under this Section shall be signed by an official of the submitting party and include the following certification:

> I certify under penalty of perjury that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted. Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete. I have no personal knowledge that the information submitted is other than true, accurate, and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

This certification requirement does not apply to emergency or similar notifications where compliance would be impractical.

39.     The reporting requirements of this Consent Decree do not relieve South Bow of any reporting obligations required by the Act or implementing regulations, or by any other federal, state, or local law, regulation, permit, or other requirement.

40.     Any information provided pursuant to this Consent Decree may be used by the United States in any proceeding to enforce the provisions of this Consent Decree and as otherwise permitted by law.

41.     South Bow may assert that information required to be provided under this Section is protected as Confidential Business Information as set forth in Paragraph 76.

VIII.    STIPULATED PENALTIES TO STATE

42.     The following stipulated penalties shall accrue per violation per Day for failure to comply with any KDHE-approved SEP deadline:

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $ 500 | 1st through 30th Day |
| $ 1,000 | 31st through 60th Day |
| $ 1,500 | 61st Day and beyond |

43.     South Bow shall pay, upon request, stipulated penalties due to the State of Kansas by (i) electronic transfer in accordance with instructions South Bow may obtain from KDHE via kdhe.accountsreceivable@ks.gov after the Effective Date or (ii) check sent by certified mail to KDHE and submitted to: Kansas Department of Health and Environment, Office of Legal Services, Suite 560, 1000 SW Jackson, Topeka, Kansas 66612-1371. At the time of payment, South Bow shall provide notice of the payment by e-mail to the State pursuant to Section XV (Notices) which shall state the method of payment and that the payment is for the stipulated

18

penalty owed pursuant to the Consent Decree in *United States & State of Kansas v. South Bow (USA) LP, et al.*

44. The State may, in the unreviewable exercise of its discretion, reduce or waive stipulated penalties otherwise due to the State under the Consent Decree.

45. Disputes concerning the State's imposition of stipulated penalties under this Section may be resolved under Section XI of this Decree (Dispute Resolution), except that in such cases the relevant Plaintiff will be the State, and neither EPA nor the United States will participate in resolution of the dispute or receive any notifications, statements of position, or other deliverables specified in Section XI.

## IX.    STIPULATED PENALTIES TO UNITED STATES

46. South Bow shall be liable for stipulated penalties to the United States for violations of this Consent Decree as specified below, unless excused under Section X (Force Majeure). A violation includes failing to perform any obligation required by the terms of this Decree according to all applicable requirements of this Decree and within the specified time schedules established by this Decree.

47. <u>Late Payment of Civil Penalty</u>. If South Bow fails to pay the civil penalty required to be paid under Section IV (Civil Penalty) when due, South Bow shall pay a stipulated penalty of $10,000 per Day for each Day that the payment is late.

48. <u>Injunctive Relief</u>.

   a. The following stipulated penalties shall accrue per violation per Day for each violation of the requirements identified in Paragraph 48.b:

19

<u>Penalty Per Violation Per Day</u>                    <u>Period of Noncompliance</u>

$2,000 ...............................................1st through 14th Day
$3,500 ............................................ 15th through 30th Day
$5,000 ...............................................31st Day and beyond

b.      Injunctive Relief Requirements:

(1)      Failure to comply with the continued requirements set forth in

Paragraphs 13 – 19;

(2)      Failure to timely:

(a)      update digital inspection platforms, as required by

Paragraph 15;

(b)      develop and implement post-incident review procedures, as

required by Paragraph 20;

(c)      develop and adopt pipe movement detection procedures, as

required by Paragraph 21;

(d)      complete an Integrity Threat Assessment for Phase 3 of the

Pipeline, as required by Paragraph 22; and

(e)      complete an Operational Reliability Assessment for Phase

3 of the Pipeline, as required by Paragraph 22.

49.      <u>Reporting Requirements</u>.  The following stipulated penalties shall accrue per

violation per Day for each violation of the reporting requirements of Section VII:

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $1,000 | 1st through 14th Day |
| $2,000 | 15th through 30th Day |
| $3,500 | 31st Day and beyond |

50.     Stipulated penalties under this Section shall begin to accrue on the Day after performance is due or on the Day a violation occurs, whichever is applicable, and shall continue to accrue until performance is satisfactorily completed or until the violation ceases. Stipulated penalties shall accrue simultaneously for separate violations of this Consent Decree.

51.     South Bow shall pay any stipulated penalty within 30 Days of receiving the United States' written demand, unless contested under the Dispute Resolution provisions of this Consent Decree.

52.     The United States may in the unreviewable exercise of its discretion, reduce or waive stipulated penalties otherwise due it under this Consent Decree.

53.     Stipulated penalties shall continue to accrue as provided in Paragraph 50, during any Dispute Resolution, but need not be paid until the following:

    a.     If the dispute is resolved by agreement of the Parties or by a decision of EPA that is not appealed to the Court, South Bow shall pay accrued penalties determined to be owing, together with interest, to the United States within 30 Days of the effective date of the agreement or the receipt of EPA's decision or order.

    b.     If the dispute is appealed to the Court, stipulated penalties shall cease to accrue on the 31st Day after the Court's receipt of the final submission regarding the dispute until the date the Court issues a final decision regarding the dispute. If the United States prevails in whole or in part, South Bow shall pay all accrued penalties determined by the Court to be owing, together with interest, within 60 Days of receiving the Court's

21

decision or order, except as provided in subparagraph c, below.

c.    If any Party appeals the District Court's decision, South Bow shall pay all accrued penalties determined to be owing, together with interest, within 30 Days of receiving the final appellate court decision.

54.    Obligations Prior to the Effective Date.  Upon the Effective Date, the stipulated penalty provisions of this Decree shall be retroactively enforceable with regard to any and all violations of Section V (Injunctive Relief) that have occurred prior to the Effective Date, provided that stipulated penalties that may have accrued prior to the Effective Date may not be collected unless and until this Consent Decree is entered by the Court.

55.    South Bow shall pay stipulated penalties in the manner set forth in Section IV above. All transmittal correspondence shall reference the Civil Action Number assigned to this case and DOJ Number 90-5-1-1-12906, and shall specify that the payment is for stipulated penalties to be deposited into the United States Treasury.

56.    If South Bow fails to pay stipulated penalties according to the terms of this Consent Decree, South Bow shall be liable for interest on such penalties, as provided for in 28 U.S.C. § 1961, accruing as of the date payment became due. Nothing in this Paragraph shall be construed to limit the United States from seeking any remedy otherwise provided by law for South Bow's failure to pay any stipulated penalties.

57.    The payment of penalties and interest, if any, shall not alter in any way South Bow's obligation to complete the performance of the requirements of this Consent Decree.

58.    Non-Exclusivity of Remedy. Stipulated penalties are not the United States' exclusive remedy for violations of this Consent Decree. Subject to the provisions of Section XIII (Effect of Settlement/Reservation of Rights), the United States expressly reserves the right to

seek any other relief it deems appropriate for South Bow's violation of this Decree or applicable law, including but not limited to an action against South Bow for statutory penalties, additional injunctive relief, mitigation or offset measures, and/or contempt. However, the amount of any statutory penalty assessed for a violation of this Consent Decree shall be reduced by an amount equal to the amount of any stipulated penalty assessed and paid pursuant to this Consent Decree.

## X.   FORCE MAJEURE

59.   "Force majeure," for purposes of this Consent Decree, means any event arising from causes beyond the control of South Bow, of any entity controlled by South Bow, or of South Bow's contractors, that delays or prevents the performance of any obligation under this Consent Decree despite South Bow's best efforts to fulfill the obligation. Given the need to protect public health and welfare and the environment, the requirement that South Bow exercise "best efforts to fulfill the obligation" includes using best efforts to anticipate any potential force majeure and best efforts to address the effects of any potential force majeure (a) as it is occurring and (b) following the potential force majeure, such that any delay or non-performance is, and any adverse effects of the delay or non-performance are, minimized to the greatest extent possible. "Force majeure" does not include financial inability to perform any obligation under this Consent Decree.

60.   If any event occurs for which South Bow will or may claim a force majeure, South Bow shall provide notice by email to EPA. The deadline for the initial notice is five Days after South Bow first knew or should have known that the event would likely delay or prevent performance. South Bow shall be deemed to know of any circumstance of which any contractor of, subcontractor of, or entity controlled by South Bow knew or should have known.

61.   If South Bow seeks to assert a claim of force majeure concerning the event, within ten Days after the notice under Paragraph 60, South Bow shall submit a further notice to

23

EPA and the State that includes (a) an explanation and description of the event and its effect on South Bow's completion of the requirements of the Consent Decree; (b) a description and schedule of all actions taken or to be taken to prevent or minimize the delay and/or other adverse effects of the event; (c) if applicable, the proposed extension of time for South Bow to complete the requirements of the Consent Decree; (d) South Bow's rationale for attributing such delay to a force majeure; (e) a statement as to whether, in the opinion of South Bow, such event may cause or contribute to an endangerment to public health or welfare or the environment; and (f) all available proof supporting the claim that the delay was attributable to a force majeure.

62.     Failure to submit a timely or complete notice or claim under Paragraph 60 or 61 regarding an event precludes South Bow from asserting any claim of force majeure regarding that event, provided, however, that EPA may, in its unreviewable discretion, excuse such failure if it is able to assess to its satisfaction whether the event is a force majeure, and whether South Bow has exercised its best efforts, under Paragraph 59.

63.     After receipt of any claim of force majeure, EPA, after a reasonable opportunity for review and comment by the State, will notify South Bow of its determination whether South Bow is entitled to relief under Paragraph 59 and, if so, the excuse of, or the extension of time for, performance of the obligations affected by the force majeure. An excuse of, or extension of the time for performance of, the obligation affected by the force majeure does not, of itself, excuse or extend the time for performance of any other obligation.

64.     If South Bow elects to invoke the dispute resolution procedures set forth in Section XI (Dispute Resolution), they shall do so no later than 30 Days after receipt of EPA's notice. In any such proceeding, South Bow has the burden of proving that it is entitled to relief under Paragraph 59, that its proposed excuse or extension was or will be warranted under the

24

circumstances, and that it complied with the requirements of Paragraphs 60 - 62. If South Bow carries this burden, the delay or non-performance at issue shall be deemed not to be a violation by South Bow of the affected obligation of this Consent Decree identified to EPA and the Court.

XI.    DISPUTE RESOLUTION

65.    Unless otherwise expressly provided for in this Consent Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising under or with respect to this Consent Decree. Defendants' failure to seek resolution of a dispute under this Section concerning an issue of which they had notice and an opportunity to dispute under this Section prior to an action by the United States to enforce any obligation of Defendants arising under this Decree precludes Defendants from raising any such issue as a defense to any such enforcement action.

66.    Informal Dispute Resolution.  Any dispute subject to Dispute Resolution under this Consent Decree shall first be the subject of informal negotiations. The dispute shall be considered to have arisen when any Defendant sends DOJ, EPA, and KDHE a written Notice of Dispute. Such Notice of Dispute shall state clearly the matter in dispute. The period of informal negotiations shall not exceed 30 Days from the date the dispute arises, unless that period is modified by written agreement. If the Parties cannot resolve a dispute by informal negotiations, then the position advanced by the United States and the State shall be considered binding unless, within 30 Days after the conclusion of the informal negotiation period, any Defendant invokes formal dispute resolution procedures as set forth below.

67.    Formal Dispute Resolution. Defendant(s) shall invoke formal dispute resolution procedures, within the time period provided in the preceding Paragraph, by sending DOJ, EPA, and KDHE a written Statement of Position regarding the matter in dispute. The Statement of

25

Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting Defendants' position and any supporting documentation relied upon by Defendant(s).

68.     The United States and the State will send Defendants their Statement of Position within 45 Days of receipt of Defendants' Statement of Position. The Plaintiffs' Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting that position and any supporting documentation relied upon by the United States. The Plaintiffs' Statement of Position is binding on Defendants, unless any Defendant files a motion for judicial review of the dispute in accordance with the following Paragraph.

69.     Judicial Dispute Resolution.  Defendant(s) may seek judicial review of the dispute by filing with the Court and serving on the United States and the State a motion requesting judicial resolution of the dispute. The motion (a) must be filed within 30 Days of receipt of the Plaintiffs' Statement of Position pursuant to the preceding Paragraph; (b) may not raise any issue not raised in informal dispute resolution pursuant to Paragraph 66, unless the Plaintiffs raise a new issue of law or fact in the Statement of Position; (c) shall contain a written statement of Defendants' position on the matter in dispute, including any supporting factual data, analysis, opinion, or documentation, and (c) shall set forth the relief requested and any schedule within which the dispute must be resolved for orderly implementation of the Consent Decree.

70.     The United States and the State shall respond to Defendants' motion within the time period allowed by the Local Rules of this Court. Defendants may file a reply memorandum, to the extent permitted by the Local Rules.

71.     Standard of Review.

      a.     Disputes Concerning Matters Accorded Record Review. Except as

otherwise provided in this Consent Decree, in any dispute brought under Paragraph 67 pertaining to the adequacy of the performance of work undertaken pursuant to this Consent Decree and all other disputes that are accorded review on the administrative record under applicable principles of administrative law, Defendants shall have the burden of demonstrating, based on the administrative record, that the position of the United States is arbitrary and capricious or otherwise not in accordance with law.

b.      Other Disputes. Except as otherwise provided in this Consent Decree, in any other dispute brought under Paragraph 67, Defendants shall bear the burden of demonstrating that their position complies with this Consent Decree and better furthers the objectives of the Consent Decree.

72.     The invocation of dispute resolution procedures under this Section shall not, by itself, extend, postpone, or affect in any way any obligation of South Bow under this Consent Decree, unless and until final resolution of the dispute so provides. Stipulated penalties with respect to the disputed matter shall continue to accrue from the first Day of noncompliance, but payment shall be stayed pending resolution of the dispute as provided in Paragraph 53. If South Bow does not prevail on the disputed issue, stipulated penalties shall be assessed and paid as provided in Sections VIII and IX (Stipulated Penalties).

XII.    INFORMATION COLLECTION AND RETENTION

73.     The United States, the State, and their representatives, including attorneys, contractors, and consultants, shall have the right of access to the Pipeline covered by the Consent Decree, as needed and at all reasonable times, upon presentation of credentials, (so long as they are accompanied by South Bow personnel, comply with applicable safety procedures, wear appropriate personal protection equipment and comply with any right-of-way agreement provisions) to:

27

a.    monitor the progress of activities required under this Consent Decree;

b.    verify any data or information submitted to the United States or the State in accordance with the terms of this Consent Decree;

c.    obtain documentary evidence, including photographs and similar data; and

d.    assess South Bow's compliance with this Consent Decree.

74.    Until five years after the termination of this Consent Decree, South Bow shall retain, and shall instruct its contractors and agents to preserve, all non-identical copies of all documents, records, or other information (including documents, records, or other information in electronic form) in their or their contractors' or agents' possession or control, or that come into their or their contractors' or agents' possession or control, and that relate in any manner to South Bow's performance of its obligations under this Consent Decree. This information-retention requirement shall apply regardless of any contrary corporate or institutional policies or procedures. At any time during this information-retention period, upon request by the United States or the State, South Bow shall provide copies of any documents, records, or other information required to be maintained under this Paragraph.

75.    At the conclusion of the information-retention period provided in the preceding Paragraph, South Bow shall notify the United States and the State at least 90 Days prior to the destruction of any non-identical documents, records, or other information subject to the requirements of the preceding Paragraph and, upon request by the United States or the State, South Bow shall deliver any such documents, records, or other information to EPA or the State. South Bow may assert that certain documents, records, or other information are privileged under the attorney-client privilege or any other privilege recognized by federal or State law.  If South Bow asserts such a privilege, they shall provide the following: (a) the title of the document,

28

record, or information; (b) the date of the document, record, or information; (c) the name and title of each author of the document, record, or information; (d) the name and title of each addressee and recipient; (e) a description of the subject of the document, record, or information; and (f) the privilege asserted by South Bow.  However, no final documents, records, or other information created or generated pursuant to the requirements of this Consent Decree shall be withheld on grounds of privilege.

76.     South Bow may also assert that information required to be provided under this Section (and Section VII (Reporting Requirements)) is protected as Confidential Business Information or other protections applicable to the release of information by Plaintiffs, covering part or all of the information required to be submitted to Plaintiffs pursuant to this Consent Decree in accordance with, as applicable, 40 C.F.R. Part 2. As to any information that South Bow seeks to protect as Confidential Business Information, South Bow shall follow the procedures set forth in 40 C.F.R. Part 2.

77.     This Consent Decree in no way limits or affects any right of entry and inspection, or any right to obtain information, held by the United States or the State pursuant to applicable federal or state laws, regulations, or permits, nor does it limit or affect any duty or obligation of South Bow to maintain documents, records, or other information imposed by applicable federal or state laws, regulations, or permits.

### XIII.   EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS

78.     This Consent Decree resolves the civil claims of the United States and the State for the violations alleged in the Complaint filed in this action through the date of lodging. South Bow previously resolved any natural resource damage claims available to the State concerning the Mill Creek Oil Spill pursuant to a Consent Agreement and Final Order, Case No. 23-E-001 BER, executed between South Bow and KDHE on May 23, 2023.

29

79. The United States and the State reserve all legal and equitable remedies available to enforce the provisions of this Consent Decree.

80. The United States and the State reserve all legal and equitable claims for, including but not limited to, injunctive relief, penalties, recovery of Oil Pollution Act ("OPA") response costs and damages including natural resource damages, criminal liability, and other appropriate relief, except as expressly provided in Paragraph 78. This Consent Decree shall not be construed to limit the rights of the United States or the State to obtain penalties or injunctive relief under the Act or implementing regulations, or under other federal or state laws, regulations, or permit conditions, except as expressly specified in Paragraph 78. The United States and the State further reserve all legal and equitable remedies to address any conditions presenting an imminent and substantial endangerment to the public health or welfare or the environment arising at, or posed by, South Bow's Pipeline, whether related to the violations addressed in this Consent Decree or otherwise.

81. In any subsequent administrative or judicial proceeding initiated by the United States or the State for injunctive relief, civil penalties, other appropriate relief relating to the Pipeline, Defendants shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, claim preclusion (res judicata), issue preclusion (collateral estoppel), claim-splitting, or other defenses based upon any contention that the claims raised by the United States or the State in the subsequent proceeding were or should have been brought in the instant case, except with respect to claims that have been specifically resolved pursuant to Paragraph 78.

82. This Consent Decree is not a permit, or a modification of any permit, under any federal, State, or local laws or regulations. South Bow is responsible for achieving and maintaining complete compliance with all applicable federal, State, and local laws, regulations,

and permits; and South Bow's compliance with this Consent Decree shall be no defense to any action commenced pursuant to any such laws, regulations, or permits, except as set forth herein. The United States and the State do not, by their consent to the entry of this Consent Decree, warrant or aver in any manner that South Bow's compliance with any aspect of this Consent Decree will result in compliance with provisions of the Act, 33 U.S.C. § 1251, et seq., or with any other provisions of federal, State, or local laws, regulations, or permits.

83.     This Consent Decree does not limit or affect the rights of Defendants or of the United States or the State against any third parties, not party to this Consent Decree, nor does it limit the rights of third parties, not party to this Consent Decree, against Defendants, except as otherwise provided by law.

84.     This Consent Decree shall not be construed to create rights in, or grant any cause of action to, any third party not party to this Consent Decree.

## XIV.   COSTS

85.     The Parties shall bear their own costs of this action, including attorneys' fees, except that the United States and the State shall be entitled to collect the costs (including attorneys' fees) incurred in any action necessary to collect any portion of the civil penalty or any stipulated penalties due to either the United States or the State but not paid by South Bow.

## XV.   NOTICES

86.     Unless otherwise specified in this Decree, whenever notifications, submissions, or communications are required by this Consent Decree, they shall be made in writing and sent by mail or email, with a preference for email, addressed as follows:

As to DOJ by email (preferred):          eescdcopy.enrd@usdoj.gov
                                         Re: DJ # 90-5-1-1-12906

As to DOJ by mail:

EES Case Management Unit
Environment & Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, D.C.  20044-7611
Re: DJ # 90-5-1-1-12906


As to EPA by email (preferred):

aaron.mark@epa.gov
gulley.katherine@epa.gov


As to EPA by mail:

Mark Aaron
Compliance Officer
U.S. EPA Region 7
Enforcement & Compliance Division
11201 Renner Boulevard
Lenexa, KS 66219

Katie Gulley
Attorney-Adviser
U.S. EPA Region 7
Office of Regional Counsel
11201 Renner Boulevard
Lenexa, KS 66219


As to the State and KDHE:

John N. Truong
Assoc. Chief Counsel, Environment
Kansas Dept. of Health and Environment
1000 SW Jackson, Suite 560
Topeka, KS 66612

Kate Gleeson
Deputy Director of Environment
Kansas Dept. of Health and Environment
1000 SW Jackson, Suite 400
Topeka, KS 66612


As to Defendants by email (preferred):

gary.salsman@southbow.com
tracy.penn@southbow.com


32

As to Defendants by mail:

Gary Salsman, P.Eng
Vice President, Safety and Operations
South Bow (USA) LP
920 Memorial City Way, Suite 800
Houston, Texas 77024
(346) 809-0515

Tracy Penn
Senior Legal Counsel, Liquids Pipelines
South Bow (USA) LP
920 Memorial City Way, Suite 800
Houston, Texas 77024
(281) 753-7584

87.    Any Party may, by written notice to the other Parties, change its designated notice recipient or notice address provided above.

88.    Notices submitted pursuant to this Section shall be deemed submitted upon mailing or transmission by email, unless otherwise provided in this Consent Decree or by mutual agreement of the Parties in writing.

## XVI.   EFFECTIVE DATE

89.    The Effective Date of this Consent Decree shall be the date upon which this Consent Decree is entered by the Court or a motion to enter the Consent Decree is granted, whichever occurs first, as recorded on the Court's docket. In the event the United States withdraws or withholds consent to this Consent Decree before entry, or the Court declines to enter the Consent Decree, then the preceding requirement to perform duties scheduled to occur before the Effective Date shall terminate.

## XVII.   RETENTION OF JURISDICTION

90.    The Court shall retain jurisdiction over this case until termination of this Consent Decree, for the purpose of resolving disputes arising under this Decree or entering orders

modifying this Decree, pursuant to Sections XI and XVIII, or effectuating or enforcing compliance with the terms of this Decree.

## XVIII. MODIFICATION

91.     The terms of this Consent Decree, including any attached appendices, may be modified only by a subsequent written agreement signed by all the Parties. Where the modification constitutes a material change to this Decree, it shall be effective only upon approval by the Court.

92.     Any disputes concerning modification of this Decree shall be resolved pursuant to Section XI (Dispute Resolution), provided, however, that, instead of the burden of proof provided by Paragraph 71, the Party seeking the modification bears the burden of demonstrating that it is entitled to the requested modification in accordance with Federal Rule of Civil Procedure 60(b).

## XIX.   TERMINATION

93.     Request for Termination. South Bow may serve upon Plaintiffs a Request for Termination of this Consent Decree not earlier than 12 months after the Effective Date and after: (a) making all payments required by Section IV (Civil Penalty); (b) completing all requirements of Section V (Injunctive Relief), including satisfactory compliance with ongoing obligations of Section V for the 12 months preceding the Request for Termination; (c) completing all requirements of Section VI (State Supplemental Environmental Project); (d) paying any accrued stipulated penalties as required by Sections VIII (Stipulated Penalties to State) and IX (Stipulated Penalties to United States); and (e) complying with all applicable requirements under Section VII (Reporting Requirements).

94.     The Request for Termination must include all supporting documentation necessary to demonstrate compliance with applicable requirements of this Section XIX (Termination).

95.     Following receipt by the United States and the State of South Bow's Request for Termination, the Parties shall confer informally concerning the Request and any disagreement that the Parties may have as to whether South Bow has satisfactorily complied with the requirements for termination of this Consent Decree. If the United States after consultation with the State agrees that the Decree may be terminated, the Parties shall submit, for the Court's approval, a joint stipulation terminating the Decree.

96.     If the United States after consultation with the State does not agree that the Decree may be terminated, South Bow may invoke Dispute Resolution under Section XI. However, South Bow shall not seek Dispute Resolution of any dispute regarding termination until 60 Days after service of its Request for Termination.

## XX.    PUBLIC PARTICIPATION

97.     This Consent Decree shall be lodged with the Court for a period of not less than 30 Days for public notice and comment in accordance with 28 C.F.R. § 50.7. The United States reserves the right to withdraw or withhold its consent if the comments regarding the Consent Decree disclose facts or considerations indicating that the Consent Decree is inappropriate, improper, or inadequate. Defendants consent to entry of this Consent Decree without further notice and agrees not to withdraw from or oppose entry of this Consent Decree by the Court or to challenge any provision of the Decree, unless the United States has notified Defendants in writing that it no longer supports entry of the Decree.

## XXI.    SIGNATORIES/SERVICE

98.    Each undersigned representative of Defendants, the State, EPA, and the Assistant Attorney General for the Environment and Natural Resources Division of the Department of Justice, certifies that that person is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind the Party that person represents to this document.

99.    This Consent Decree may be signed in counterparts, and its validity shall not be challenged on that basis. For purposes of this Consent Decree, a signature page that is transmitted electronically (e.g., by emailed PDF) shall have the same effect as the original. Defendants agree to accept service of process by mail with respect to all matters arising under or relating to this Consent Decree and to waive the formal service requirements set forth in Rules 4 and 5 of the Federal Rules of Civil Procedure and any applicable Local Rules of this Court including, but not limited to, service of a summons. Defendants need not file an answer to the complaint in this action unless or until the Court expressly declines to enter this Consent Decree.

## XXII.   INTEGRATION

100.    This Consent Decree, including deliverables that are subsequently approved pursuant to this Decree, constitutes the entire agreement among the Parties regarding the subject matter of the Decree and supersedes all prior representations, agreements and understandings, whether oral or written, concerning the subject matter of the Decree herein.

## XXIII. 26 U.S.C. SECTION 162(f)(2)(A)(ii) IDENTIFICATION

101.    For purposes of the identification requirement in Section 162(f)(2)(A)(ii) of the Internal Revenue Code, 26 U.S.C. § 162(f)(2)(A)(ii), and 26 C.F.R. § 1.162-21(b)(2), performance of Section II (Applicability), Paragraph 5; Section V (Injunctive Relief), Paragraphs 13-22; Section VI (Reporting Requirements), Paragraphs 34-36 & 28; and Section XII

(Information Collection and Retention), Paragraphs 73-75 is restitution, remediation, or required to come into compliance with law.

## XXIV. HEADINGS

102.    Headings to the Sections and Subsections of this Consent Decree are provided for convenience and do not affect the meaning or interpretation of the provisions of this Consent Decree.

## XXV.  FINAL JUDGMENT

103.    Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment of the Court as to the United States, the State, and Defendants. The Court finds that there is no just reason for delay and therefore enters this judgment as a final judgment under Fed. R. Civ. P. 54 and 58.

Dated and entered this ___ day of _____, 20___

_____
UNITED STATES DISTRICT JUDGE

Signature Page to Consent Decree in *United States & State of Kansas v. South Bow (USA) LP, et al.*

FOR PLAINTIFF THE UNITED STATES OF AMERICA:

ADAM R.F. GUSTAFSON
Principal Deputy Assistant Attorney General
Environment and Natural Resources Division
U.S. Department of Justice

Dated: _____      /s/ Erika M. Wells
_____
ERIKA M. WELLS
Senior Counsel
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
202-532-3258
erika.wells@usdoj.gov

RYAN A. KRIEGSHAUSER
United States Attorney
District of Kansas

Dated: _____      /s/ Christopher Allman
_____
CHRISTOPHER ALLMAN
Assistant United States Attorney
Chief, Civil Division
District of Kansas
500 State Avenue, Suite 360
Kansas City, KS  66101
913-551-6684
Chris.allman@usdoj.gov

Signature Page to Consent Decree in *United States & State of Kansas v. South Bow (USA) LP, et al.*

FOR PLAINTIFF THE UNITED STATES OF AMERICA (continued):

FOR THE U.S. ENVIRONMENTAL PROTECTION AGENCY:

Dated: **7/9/2026**

JEFFREY A. HALL
Assistant Administrator
Office of Enforcement and Compliance Assurance
U.S. Environmental Protection Agency

CECIL RODRIGUES
Deputy Assistant Administrator
Office of Enforcement and Compliance Assurance
United States Environmental Protection Agency

CAROL DeMARCO KING
Acting Division Director
Water Enforcement Division
Office of Civil Enforcement
Office of Enforcement and Compliance Assurance
United States Environmental Protection Agency

KELLY K. BRANTNER
Attorney-Advisor
Water Enforcement Division
Office of Civil Enforcement
Office of Enforcement and Compliance Assurance
United States Environmental Protection Agency

Signature Page to Consent Decree in *United States & State of Kansas v. South Bow (USA) LP, et al.*

FOR PLAINTIFF THE UNITED STATES OF AMERICA (continued):

Dated: _____

JAMES MACY
Digitally signed by JAMES MACY
Date: 2026.06.12 14:36:23 -05'00'

JIM MACY
Regional Administrator
U.S. Environmental Protection Agency, Region 7
11201 Renner Boulevard
Lenexa, KS 66219

Dated: _____

LESLIE HUMPHREY
Digitally signed by LESLIE HUMPHREY
Date: 2026.06.12 14:05:31 -05'00'

LESLIE HUMPHREY
Regional Counsel
U.S. Environmental Protection Agency, Region 7
Office of Regional Counsel
11201 Renner Boulevard
Lenexa, KS 66219

Dated: _____

KATHERINE GULLEY
Digitally signed by KATHERINE GULLEY
Date: 2026.06.12 12:56:54 -05'00'

KATIE GULLEY
Attorney-Adviser
U.S. Environmental Protection Agency, Region 7
Office of Regional Counsel
11201 Renner Boulevard
Lenexa, KS 66219
(913) 551-7880
Gulley.Katherine@epa.gov

Signature Page to Consent Decree in *United States & State of Kansas v. South Bow (USA), LP, et al.*

FOR THE STATE OF KANSAS:

Dated: 5/11/26

JANET STANEK
Secretary
Kansas Dept. of Health and Environment
1000 SW Jackson St.
Topeka, Kansas 66612

Dated: 5/6/2026

JOHN N. TRUONG
Sr. Attorney, Environmental Practice Group
Special Assistant Attorney General, State of KS
Kansas Dept. of Health and Environment
1000 SW Jackson St., Suite 560
Topeka, Kansas 66612
(785) 296-1698
(785) 559-4272 (fax)
john.truong@ks.gov

Signature Page to Consent Decree in *United States & State of Kansas v. South Bow (USA) LP, et al.*

FOR SOUTH BOW (USA) LP:

4/13/2026
Date

GARY SALSMAN, P.ENG
Vice President, Safety and Operations
South Bow (USA) LP
920 Memorial City Way, Suite 800
Houston, Texas 77024
(346) 809-0515
gary.salsman@southbow.com

TRACY PENN
Senior Legal Counsel, Liquids Pipelines
South Bow (USA) LP
920 Memorial City Way, Suite 800
Houston, Texas 77024
(281) 753-7584
tracy.penn@southbow.com

FOR SOUTH BOW INFRASTRUCTURE OPERATIONS INC.:

4/13/2026
Date

GARY SALSMAN, P.ENG
Vice President, Safety and Operations
South Bow Infrastructures Operations Inc.
920 Memorial City Way, Suite 800
Houston, Texas 77024
(346) 809-0515
gary.salsman@southbow.com

TRACY PENN
Senior Legal Counsel, Liquids Pipelines
South Bow Infrastructure Operations Inc.

920 Memorial City Way, Suite 800
Houston, Texas 77024
(281) 753-7584
tracy.penn@southbow.com